UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CIVIL ACTION NO. 03-204-DLB

GERALD GRESH                                                                                        PLAINTIFF

v.                           **MEMORANDUM OPINION AND ORDER**

WASTE SERVICES OF AMERICA, INC.
W. TODD SKAGGS, JAMES P. DALTON,
AND RIVER CITIES DISPOSAL, LLC                                          DEFENDANTS

\*   \*   \*   \*   \*

Plaintiff Gerald Gresh commenced this civil action against Defendants, Waste Services of America, Inc. (WSA), W. Todd Skaggs, James P. Dalton and River Cities Disposal, LLC (RCD), alleging that he was fraudulently induced to refrain from exercising his stock option until after most of WSA's assets had been sold or transferred. Gresh asserted various state law claims, including fraudulent misrepresentation and breach of the implied duty of good faith and fair dealing.

This matter is on remand from the Sixth Circuit Court of Appeals for the second time. *See Gresh v. Waste Servs. of Am.*, 311 F. App'x 766 (6th Cir. 2009). Presently before the Court is Defendants' Motion for Summary Disposition on Behalf of W. Todd Skaggs and River Cities Disposal, LLC (Doc. # 110). The motion has been fully briefed (Docs. # 111, 112), and the matter is now ripe for review. For the reasons set forth below, Defendants' motion will be **GRANTED** as to River Cities Disposal, LLC. Defendants' motion as to W. Todd Skaggs will be **GRANTED** on the breach of implied duty of good faith and fair dealing

1

claim and **DENIED** on the fraudulent misrepresentation claim.

## I. BACKGROUND

The Court of Appeals summarized the relevant facts of this case in its recent decision. *Gresh*, 311 F. App'x at 769-70. Accordingly, a full recitation of the factual history is unnecessary. It is appropriate, however, to note the current procedural posture and highlight facts relevant to the issues that remain on remand.

In its February 17, 2009, decision, the Court of Appeals affirmed in part and reversed in part this Court's prior grant of summary judgment, finding that factual issues precluded summary judgment on breach of the implied duty of good faith and fair dealing and one fraudulent misrepresentation claim. *Id.* at 774, 776. The fact at issue for both remaining claims is Dalton's[1] statement to Gresh that "nothing...had crossed [his] desk" concerning the sale of WSA in response to Gresh's inquiry about the imminence of Skaggs'[2] plan to sell WSA. Specifically, the Sixth Circuit held that a "jury reasonably could conclude the representation was fraudulent" and further could reasonably conclude that a breach of the implied duty of good faith and fair dealing occurred when Dalton made the statement. *Id.*

After the case was remanded, Defendants again submitted a motion for summary judgment, this time seeking dismissal of Defendant Todd Skaggs and Defendant River Cities Disposal, LLC from the case, arguing that neither Skaggs nor RCD can be held vicariously liable for Dalton's alleged misrepresentation.

---

[1] Vice President and Treasurer of WSA at all times relevant to this action.

[2] President and sole shareholder of WSA at all times relevant to this action.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is not a genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence, and draw all reasonable inferences, in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). Once the movant has satisfied its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, it must produce evidence showing that a genuine issue remains, *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). If after reviewing the record as a whole, a rational fact finder could not find for the nonmoving party, summary judgment should be granted. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

### B. Todd Skaggs

Defendants first contend that Todd Skaggs is entitled to summary judgment because Dalton, as Vice President and Treasurer of WSA, was acting as an agent of the corporation, not as an agent of Skaggs individually when he made the statement that nothing had crossed his desk concerning the sale of WSA. To the extent, then, that Plaintiff attempts to hold Skaggs liable under an agency theory, Defendants argue, the

claim should fail because the record evidence is insufficient to support an agency theory of liability.

Despite these assertions, dismissal of Todd Skaggs from the instant action is inappropriate because factual issues preclude summary judgment on the fraudulent misrepresentation claim.  As an employee of WSA, Dalton was certainly a representative of WSA, but a genuine issue of material fact remains as to whether Dalton, by telling Gresh that "nothing....had crossed [his] desk" concerning the sale of WSA, acted as an agent for Skaggs in his individual capacity.  The Court of Appeals in its decision specifically stated "[w]hether Dalton made that statement in his individual capacity, in his capacity as representative of WSA or *as an agent of Skaggs*, a jury reasonably could conclude that the representation was fraudulent."  *Gresh*, 311 F. App'x at 774 (emphasis added).

To recover for fraudulent misrepresentation, the Plaintiff must establish by clear and convincing evidence that, in taking or refraining from taking an action, he reasonably relied on a representation that was material, false, known to be false or made recklessly.  *See Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1444 (6th Cir. 1993); *Ross v. Powell*, 206 S.W.3d 327, 330 (Ky. 2006); *Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 359 (Ky. Ct. App. 1978).  The Plaintiff must further establish that the representation was made with the intent of inducing him to act or refrain from acting, thereby causing injury.  *Id.*  Under Kentucky law, agency is established through the manifestation of consent that another shall act on a principal's behalf, subject to the principal's control.  *Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 50 (Ky. 2003).  The right to control is considered the most critical element in determining a principal's liability for the tortious act of an agent.  *Id.*  Other factors in determining whether an agency relationship exists include: (a) the extent

of control which, by agreement, the principal may exercise over the details of the work; (b) whether or not the work is part of the regular business of the employer; (c) whether or not the parties believe they are creating the relationship of agent and principal, etc.  *See Brooks v. Grams, Inc.*, 289 S.W.3d 208, 212 (Ky. Ct. App. 2008) (citing *Sam Horne Motor & Implement Co. v. Gregg*, 279 S.W.2d 755, 756 (Ky. 1955)).

Gresh alleges that after he was terminated, Skaggs intentionally cut off any direct communication with him and that all negotiations pertaining to an agreement and release of Gresh's stock option agreement were routed through Dalton.  Gresh further alleges that Dalton was acting on Skaggs' behalf when he made the statement at issue.  In response, Defendants maintain that Dalton was simply acting on behalf of the corporation.  However, genuine issues of material fact preclude summary judgment on the issue of whether Dalton was acting as Skaggs' agent in his individual capacity.

For instance, a jury could reasonably find that Skaggs exercised paramount control over Dalton's actions and negotiations with Gresh as it related to the agreement and release of Gresh's stock option after July, 1998.  (Doc. # 52, 145-46; Doc. # 53, 29). Defendants admit in their answer that WSA *and Skaggs* authorized Dalton to communicate with Gresh to negotiate the release of his option interest.  (Doc. # 76, ¶¶ 89, 94) (emphasis added).  In July 1998, Dalton was tasked with the  responsibility of negotiating a buyout of Gresh's stock option (Doc. # 52, 40; Doc. # 53, 29-30); Skaggs specifically testified that Dalton "was the person that I elected to continue to discuss with [Gresh] the possibility of acquiring the stock options back."  (Doc. # 53, 30).  Skaggs admitted that Dalton was required to obtain his approval before communicating *anything* to Gresh and, to the best of his knowledge, Skaggs reviewed every agreement drafted before it was sent to Gresh

5

for consideration. (Doc. # 53, 30-31) (emphasis added).

The record further reveals that Skaggs maintained control over all messages relayed to Gresh during the negotiation process, including even the most minute change made to the agreement. (Doc. # 52, 146-158; Doc. # 53, 30-31). Dalton testified that he was simply a passive "messenger" for Skaggs, and that any individualized input on his part was non-existent (Doc. # 52, 146, 158); a fact Skaggs confirmed when he testified that he "had to approve everything that was sent back [to Gresh]." (Doc. # 53, 30-31). When negotiating the agreement and release, Dalton would relay anything Gresh said directly to Skaggs and would physically show Skaggs anything Gresh faxed or sent. Skaggs would then formulate a response and tell Dalton what to say. (Doc. # 52, 164). Interestingly, Dalton negotiated Gresh's proposed change to the agreement and release that would have held Skaggs personally liable for the buyout price of $250,000. (Doc. # 52, 149-50). Gresh wanted to make Skaggs as an individual party to the agreement and release, at which point Skaggs directed Dalton to reject Gresh's proposed change. (Doc. # 52, 149-50). The proposed change would have made Skaggs personally liable for the buyout amount articulated in the agreement. (Doc. # 52, 149-50).

Shortly before the Liberty sale–once both parties knew the deal would conclude successfully–Skaggs rewarded Dalton with a $375,000 bonus. (Doc. # 52, 19-20, 69). When asked about the justification for the bonus, Dalton simply stated "[i]t was Todd's decision to do that." (Doc. # 52, 20). Dalton admitted that there were discussions that after the Liberty sale "there may be some bonuses at the end." (Doc. # 52, 20). That Skaggs personally rewarded Dalton with more than a quarter-million dollars after most of WSA's assets were sold to Liberty could lead a reasonable jury to conclude that an agency

6

relationship existed between Skaggs and Dalton that benefitted Skaggs in his individual capacity.

Skaggs' control over Dalton's actions, and specifically his control over Dalton's negotiations with Gresh regarding the buyout of Gresh's stock option, is evident throughout the record and is indicative of an agency relationship. Whether the agency relationship was one on behalf of WSA or Skaggs in his individual capacity is a question of fact to be determined by a jury. Because genuine issues of material fact exist as to whether Dalton was acting on behalf of Skaggs individually, rather than as a mere agent of WSA, summary judgment on behalf of Defendant Skaggs is not warranted.

Defendants next contend that Skaggs cannot be held liable for a breach of the implied duty of good faith and fair dealing because Skaggs, in his individual capacity, was not a party to the proposed agreement and release or the stock option agreement, and therefore–pursuant to Kentucky law–a duty of good faith and fair dealing did not arise. *See Quadrille Bus. Sys. v. Ky. Cattlemen's Ass'n, Inc.*, 242 S.W.3d 359, 364 (Ky. Ct. App. 2007).

Under Kentucky law, parties have a duty in carrying out a contract to act in good faith, sincerely and without deceit or fraud. *Pearman v. West Point Nat'l Bank*, 887 S.W.2d 366, 368 n. 3 (Ky. Ct. App. 1994). This is generally observed as the covenant of good faith and fair dealing implied in every contract. *Ranier v. Mount Sterling Nat'l Bank*, 812 S.W.2d 154, 156 (Ky. 1991). A breach of the implied duty of good faith and fair dealing is an impossibility where a contract has not yet been formed. *Quadrille*, 242 S.W.3d at 364.

In this case, a contract was never formed with respect to an agreement and release of Gresh's stock option. Gresh rejected the initial offer of $250,000 presented at his

termination meeting on June 22, 1998, after which Skaggs increased the offer to $315,000. (Doc. # 47, 171-73). Relying on Dalton's statement that nothing had crossed his desk regarding an imminent sale, Gresh faxed Skaggs a proposal for the buyout of his option on October 9, 1998. Gresh never received a response to his October 9th fax, sent it again in December, 1998, and thereafter called Dalton to determine the status of his offer. According to Gresh, Dalton merely stated that Skaggs "wanted to wait a while" before making a decision. (Doc. # 52, ex. 7.27). The issue therefore is whether there exists a genuine issue of material fact as to a breach of the duty of good faith and fair dealing that arose with respect to the original stock option contract.

Todd Skaggs signed the stock option agreement between Gresh and WSA in his official capacity as President of WSA. (Doc. # 53, ex. 3). The only parties to the contract, then, were Gresh and WSA. Consequently, an implied duty of good faith and fair dealing did not arise with respect to Skaggs in his individual capacity. The Sixth Circuit, in its discussion of the covenant of good faith and fair dealing, specifically stated "when Gresh, an option holder, asked about the status of Skaggs' plans to sell WSA, the common-law duty of good faith required *WSA* either to be straight with Gresh or to say nothing at all. By telling Gresh that a sale was not imminent, *WSA* deprived Gresh of the benefit for which he bargained: the chance to exercise his option while it was worth something." *Gresh*, 311 F. App'x at 776-77 (emphasis added). WSA had a duty to be straight with Gresh or say nothing at all because it was a party to the original stock option contract. Because Skaggs was not a party to the stock option contract in his individual capacity he never owed a duty of good faith and fair dealing to Gresh. Summary judgment is therefore appropriate as to Todd Skaggs on the breach of implied duty of good faith and fair dealing claim.

8

**C. River Cities Disposal, LLC**

Despite the fact that River Cities Disposal, LLC was not a party to the stock option agreement–nor was it even in existence at the time the contract was formed or at the time Dalton made his statement to Gresh–Plaintiff alleges that RCD is liable as the entity that aided and abetted Dalton and Skaggs' fraud and bad faith, and as the entity which benefitted to Gresh's detriment.  RCD is a limited liability company owned by Skaggs in which Dalton is a member.  Plaintiff contends RCD was the entity Skaggs and Dalton used to transfer WSA's last remaining asset: the Big Run Landfill.  As such, Gresh argues RCD was the corporate entity that served to aid a fraudulent transaction and breach the duty of good faith.  Plaintiff relies on *Steelvest v. Scansteel Service Center*, 807 S.W.2d 476 (Ky. 1991), to make this argument; however, *Steelvest* is wholly distinguishable from the instant action.

*Steelvest* involved a breach of fiduciary duty claim on the part of an employee and required active participation in the violation of the fiduciary duty. *Id.* at 483-87.  The Kentucky Supreme Court found the circuit court's grant of summary judgment on behalf of the bank and the investors who loaned the employee money to set up a competing business while still employed at appellant's corporation was in error. *Id.* at 486-87.  A jury could reasonably find, the court concluded, that the bank and the investors aided and abetted the employee's breach of fiduciary duty to his former employer. *Id.* at 486-87.

Plaintiff attempts to analogize *Steelvest* to the current set of facts, but fails to explain how RCD actively participated in defrauding Plaintiff or how RCD aided and abetted Dalton and Skaggs such that it amounted to a breach of the covenant of good faith and fair dealing.  In *Steelvest*, the bank and the investors actively participated in aiding the

9

employee to create a competing business: the bank made loans, the investors purchased the "building, real estate, and equipment" for the new company. *Id.* That RCD existed as a mere receptacle of WSA's assets stands in stark contrast to the active participation of the bank and investors in *Steelvest*.

The record, therefore, does not present a genuine issue of material fact as to whether RCD aided and abetted fraud or bad faith on behalf of Dalton and Skaggs. Accordingly, Defendant RCD is entitled to summary judgment as a matter of law. That RCD was also not in existence at the time of the stock option agreement, and thus not a party to the agreement, a covenant of good faith and fair dealing did not arise as it relates to River Cities Disposal, LLC. Summary judgment in favor of River Cities Disposal, LLC is proper because RCD owed no duty of good faith and fair dealing to Gresh nor did it actively aid and abet the alleged fraud on the part of Dalton and Skaggs.

### III. CONCLUSION

For the reasons stated herein, **IT IS ORDERED** as follows:

1. Defendants' Motion for Summary Disposition (Doc. # 110) is hereby **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. Summary judgment on all remaining claims is hereby **GRANTED** as to Defendant River Cities Disposal, LLC.;

   b. Summary judgment is hereby **GRANTED** as to Defendant W. Todd Skaggs on the breach of implied duty of good faith and fair dealing claim;

   c. Summary judgment is hereby **DENIED** as to Defendant W. Todd Skaggs on the fraudulent misrepresentation claim.

2. This matter is hereby set for a **Status Conference** on **Monday, January 25, 2010, at 10:30 a.m. at Ashland**.

This 31st day of December, 2009.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\Opinions\0-03-204-MemoOrder-Deny-Grant-in part-MSJ2.wpd